AMERADA HESS CORPORATION, ATLANTIC RICHFIELD COM-
PANY, CONOCO INC., CITIES SERVICE COMPANY, EXXON
CORPORATION, PHILLIPS PETROLEUM COMPANY, CHEV-
RON U.S.A. INC., MOBIL OIL CORPORATION, UNION OIL
COMPANY OF CALIFORNIA, GULF OIL CORPORATION,
SHELL OIL COMPANY, DIAMOND SHAMROCK CORPORA-
TION, TENNECO OIL COMPANY, AND TEXACO, INC., PLAIN-
TIFFS-APPELLANTS, v. DIRECTOR, DIVISION OF TAXATION,
DEFENDANT-RESPONDENT.

Superior Court of New Jersey
Appellate Division

Argued January 7, 1986—Decided February 7, 1986.

Before Judges ANTELL, SHEBELL and MUIR.

*Charles M. Costenbader* argued the cause for appellants Atlantic Richfield Company, Conoco Inc., Cities Service Company, Exxon Corporation, Phillips Petroleum Company, Chevron USA Inc., Mobil Oil Corp., Union Oil Company, Gulf Oil Corp., Shell Oil Company and Diamond Shamrock Corp. (*Stryker, Tams & Dill,* attorneys).

*Mary R. Hamill,* Deputy Attorney General, argued the cause for Director, Division of Taxation (*Irwin I. Kimmelman,* Attorney General of New Jersey, attorney).

*Ralph Muoio* argued the cause for appellant Amerada Hess Corporation (*Wilentz, Goldman & Spitzer,* attorneys).

*Laurence Reich* argued the cause for appellant Tenneco Oil Company and Texaco Inc. (*Carpenter, Bennett & Morrissey,* attorneys).

The opinion of the court was delivered by,

ANTELL, P.J.A.D.

Plaintiffs, consisting of fourteen domestic oil producers, appeal from a determination of the Tax Court requiring taxes paid to the federal government under the Crude Oil Windfall Profit Tax Act of 1980, 26 *U.S.C.A.* §§ 4986–4998, (hereinafter referred to as "WPT") to be included as taxable income under the New Jersey Corporation Business Tax Act, *N.J.S.A.* 54:10A–1 *et seq.* (hereinafter referred to as "CBT"). The opinion of the Tax Court is reported at 7 *N.J.Tax* 51 (Tax Ct.1984). The essential factual and statutory framework is not in dispute.

The CBT was amended in 1958 to provide for the payment of taxes on "entire net income." This is defined by *N.J.S.A.* 54:10A–4(k) as follows:

(k) "Entire net income" shall mean total net income from all sources, whether within or without the United States, and shall include the gain derived from the employment of capital or labor, or from both combined, as well as profit gained through a sale or conversion of capital assets. For the purpose of this act, the amount of a taxpayer's entire net income shall be deemed prima facie to be equal in amount to the taxable income, before net operating loss deduction and special deductions, which the taxpayer is required to report to the United States Treasury Department for the purpose of computing its federal income tax; provided, however, that in the determination of such entire net income,

\* \* \* \* \* \* \* \*

(2) Entire net income shall be determined without the exclusion, deduction or credit of:

\* \* \* \* \* \* \* \*

(C) Taxes paid or accrued to the United States on or measured by profits or income. . . .

This appeal focuses on the proviso that entire net income shall be determined "without the exclusion, deduction or credit of: \* \* \* [t]axes paid or accrued to the United States on or measured by profits or income . . .," referred to as the "add-back" provision. As the Tax Court observed, the precise issue is whether the WPT tax is a tax on or measured by profits or income within the meaning of the foregoing enactment.

The WPT was enacted by Congress following the removal of controls upon the price of domestically produced crude oil. The effect of decontrol was to enable the oil producers to receive prices paid on the world market in competition with foreign producers. As respondent acknowledges, the WPT is a federal excise tax imposed upon the difference between world prices and the adjusted base price, which is the controlled price after allowance for inflation and severance taxes. The so-called windfall profit lies in the difference between the two prices. The tax is imposed on each barrel of crude oil when it is brought to the surface and "removed from the premises," 26 *U.S.C.A.* § 4986(a), regardless of how much the producer later receives for the barrel, whether it is ever resold on the market and even if it is lost or destroyed. Its consequences are in no way dependent upon the realization of gain or income, and no

provision is made for a refund or credit should the barrel not be sold. However, the WPT provides for a "net income limitation" which confines the tax base to the lesser of the windfall profit per barrel or 90% of the net income attributable to the barrel. 26 *U.S.C.A.* § 4988(b)(1). The net income attributable to the barrel is calculated by dividing the taxable income realized by the particular oil property by the number of barrels produced. 26 *U.S.C.A.* § 4988(b)(2).

As one commentator has noted, the term "windfall profit" in the title of the Act is, in part, a misnomer. Shurtz, "The Windfall Profit Tax-Poor Tax Policy? Poor Energy Policy?," 34 *U.Miami L.Rev.* 1115, 1117 (1980). The structure of the Act is designed to increase the production of domestic oil and to promote energy independence for the United States. *Id.* at 1156. Thus, oil exploration is encouraged by imposing varying rates of taxation ranging from 30% to 70% on different "tiers" of oil. 26 *U.S.C.A.* § 4987(b). To greatly simplify, tier-one oil, upon which the highest tax rate is imposed, comes from properties which were producing before 1973; tier-two oil comes from properties which began production after 1972; tier-three oil includes oil produced through very expensive tertiary recovery techniques and oil discovered after January 1979. *See* 26 *U.S.C.A.* § 4991; Robison, "The Misnamed Tax: The Crude Oil Windfall Profits Tax of 1980," 84 *Dickinson L.Rev.* 589, 592–595 (1980). Under the Act, certain newly produced oil, such as that taken from a property in Alaska outside one of the existing Prudhoe Bay properties, is exempt. 26 *U.S.C.A.* §§ 4991(b) and 4994(e); Shurtz, *supra,* at 1156. It is evident, therefore, that the amount of tax actually realized from each barrel of crude removed from the premises is significantly affected by factors unrelated to income or profit.

Because the WPT is payable without regard to the profitability of the oil producers' overall business activities plaintiffs maintain that it is not a tax on or measured by profits or income and should therefore be deducted from entire net income in determining the tax base under the CBT.

The Tax Court decided that the WPT fell within the add-back provision of the CBT on the sole ground that by failing to amend the CBT following passage of the WPT the state legislature demonstrated its understanding that no further legislative action was needed to.clarify its intent that the WPT *was not* deductible from entire net income. This rationale is flawed by the fact that it arbitrarily presupposes the very fact in question. The court could just as easily have reached a contrary result by assuming that the legislature did not amend the CBT in recognition that the CBT as written sufficiently manifested its intent that the WPT *was* deductible from entire net income. Thus, it has been observed, "[i]nsofar as legislative intent is concerned inaction demonstrates nothing more than that subsequent legislatures failed to act." *Masse v. Public Employees Retirem. Sys.*, 87 *N.J.* 252, 264 (1981).

Our treatment of this issue begins with the rule that "when interpretation of a taxing provision is in doubt, and there is no legislative history that dispels that doubt, the court should construe the statute in favor of the taxpayer." *Fedders Financial Corp. v. Taxation Div. Dir.*, 96 *N.J.* 376, 385 (1984). See also *Kingsley v. Hawthorne Fabrics, Inc.*, 41 *N.J.* 521, 528–529 (1964) wherein the Supreme Court quoted approvingly the following language from *Gould v. Gould*, 245 *U.S.* 151, 153, 38 *S.Ct.* 53, 62 *L.Ed.* 211, 213 (1917):

> In the interpretation of statutes levying taxes it is the established rule not to extend their provisions, by implication, beyond the clear import of the language used, or to enlarge their operations so as to embrace matters not specifically pointed out. In case of doubt they are construed most strongly against the government, and in favor of the citizen.

In the definition of "entire net income" as a tax base for the CBT we discern from the use of such terms as "total net income," "gain" and "profit" an intent to tax the difference between revenues and expenses received and incurred in the overall conduct of business. Indeed, the statute itself specifies that entire net income

> shall be deemed prima facie to be equal in amount to the taxable income, before net operating loss deduction and special deductions, which the taxpayer is

required to report to the United States Treasury Department for the purpose of computing its federal income tax....

For purposes of federal income taxation the WPT is declared a deductible expense, like state and local taxes, 26 *U.S.C.A.* § 164(a)(5), rather than as one of the nondeductible taxes enumerated at 26 *U.S.C.A.* § 275, typically federal income, excess profits and penalty excise taxes. As H.R.Rep. No. 96–304 (June 22, 1979) states at 600: "the Windfall Profit Tax is a deductible business expense under the income tax."

In our view the purpose of the add-back provision is to preserve undiluted for state taxation the same tax base upon which federal income taxes were computed. That it should not be read to include legitimate business expenses so as to create tax liabilities in spite of overall losses is suggested by the philosophy implicit in the report of the New Jersey Tax Policy Committee, *Non-Property Taxes in a Fair and Equitable Tax System* (1972). This document was prepared by a distinguished committee appointed by Governor Cahill in 1970 and comprehensively reviews New Jersey's system of public financing. One of the questions which it explored was whether and to what extent New Jersey should rely on the net worth or net income components of the CBT. In recommending an increase in the tax rate on the net income component the committee stated:

> In reaching these conclusions, we have proceeded on the premise that, in general, the net income measure of the corporate tax commends itself, *because it imposes the levy in accordance with actual profits earned, whereas the net worth tax, which is essentially a levy measured by net property owned, is payable regardless of profit, and is, accordingly, levied on all corporations including those that experience losses during the taxable year.* Moreover, the tendency in State taxation in recent years has been to rely more and more on corporate income taxes. [*Id.* at 17. Emphasis ours].

Respondent's contention that the 90% net income limitation of the WPT is a safeguard against tax liability for an overall unprofitable operation does not affect our result. This is explained in *Robison, supra,* at 601, n. 89:

This 90% net income limitation raises problems because it is calculated with respect to a "property" and not with respect to the overall profitability of the oil producing entity. Even small oil companies usually own several oil producing properties. Even if one oil property is producing oil at a profit substantial losses from other property may actually put the producer in a net loss position. The windfall profits tax will still have to be paid, however, on the oil produced from the "profitable" property. The possibility that an oil producer would have to pay the windfall profits tax although in a loss position was even recognized by a proponent of the tax. *See* Cong.Rec. S17481–82 (Daily Ed. Nov. 27, 1979) (remarks of Senator Chaffee in response to queries from Senator Armstrong).

We conclude that the WPT is not a tax on or measured by profits or income within the meaning of *N.J.S.A.* 54:10A–4(k)(2)(C).

Reversed.