## AMERADA HESS CORP. ET AL. *v.* DIRECTOR, DIVISION OF TAXATION, NEW JERSEY DEPARTMENT OF THE TREASURY

No. 87–453.   Argued November 29, 1988—Decided April 3, 1989*

*Together with No. 87–464, *Texaco Inc. et al.* v. *Director, Division of Taxation, New Jersey Department of the Treasury*, also on appeal from the same court.

BLACKMUN, J., delivered the opinion of the Court, in which REHNQUIST, C. J., and BRENNAN, WHITE, MARSHALL, STEVENS, and KENNEDY, JJ., joined. SCALIA, J., filed an opinion concurring in the judgment, *post*, p. 80. O'CONNOR, J., took no part in the consideration or decision of the cases.

*Mark L. Evans* argued the cause for appellants in both cases. With him on the briefs were *Robert L. Moore II, James P. Tuite, Charles M. Costenbader, Charles H. Friedrich III, Laurence Reich, Frederic K. Becker, Robert E. McManus, James R. Ron, Tom O. Foster III, Paul Wehrle, John A. Carrig,* and *William D. Peltz.*

*Mary R. Hamill,* Deputy Attorney General of New Jersey, argued the cause for appellee in both cases. With her on the brief were *Cary Edwards,* Attorney General, *John P. Miscione* and *Sarah T. Darrow,* Deputy Attorneys General, *Martin Lobel,* and *James F. Flug.*†

†Briefs of *amici curiae* urging reversal were filed for the American Mining Congress et al. by *William L. Goldman* and *James A. Riedy;* and for the Committee on State Taxation of the Council of State Chambers of

JUSTICE BLACKMUN delivered the opinion of the Court.

Appellants in this litigation are 13 major oil companies that do business in the State of New Jersey. They are subject to New Jersey's Corporation Business Tax. They also are subject to the federal windfall profit tax imposed on producers of crude oil. None of appellants' oil production takes place in New Jersey.

Each appellant has sought to deduct its federal windfall profit tax in calculating "entire net income" for purposes of the New Jersey Corporation Business Tax. Under the applicable New Jersey statute, however, a corporation may not deduct a federal tax that is "on or measured by profits or income." The Supreme Court of New Jersey ruled that the windfall profit tax is a tax "on or measured by profits or income." The question before us is whether, as so construed, the New Jersey provision runs afoul of the Commerce Clause or of the Fourteenth Amendment to the United States Constitution.

I

A

In conjunction with the decontrol of oil prices, Congress enacted the Crude Oil Windfall Profit Tax Act of 1980, Pub. L. 96–223, Tit. I, 94 Stat. 230, now codified as 26 U. S. C.

Commerce by *E. Susan Garsh, John S. Brown, Jody E. Forchheimer, Stephen A. Bokat, Jan S. Amundson, Jean A. Walker,* and *Paul H. Frankel.*

A brief of *amici curiae* urging affirmance was filed for the State of Iowa et al. by *Thomas J. Miller,* Attorney General of Iowa, *Harry M. Griger,* Special Attorney General, and *Marcia Mason,* Assistant Attorney General, joined by the Attorneys General for their respective States as follows: *John K. Van de Kamp* of California, *Robert A. Butterworth* of Florida, *Michael J. Bowers* of Georgia, *James T. Jones* of Idaho, *Frank J. Kelley* of Michigan, *Mike Greely* of Montana, *Robert Abrams* of New York, *Nicholas J. Spaeth* of North Dakota, *James E. O'Neil* of Rhode Island, *T. Travis Medlock* of South Carolina, and *Joseph B. Meyer* of Wyoming.

*Solicitor General Fried, Deputy Solicitor General Wallace,* and *Richard G. Taranto* filed a brief for the United States as *amicus curiae.*

§§ 4986–4998 (Act).[1] The Act imposes a tax on the "windfall profit" that a crude-oil producer receives from the oil it produces. The "windfall profit" for each barrel of oil is essentially the difference between (a) the deregulated price for the oil (that is, its actual sales price)[2] and (b) the regulated price that would have applied had decontrol not taken place.[3]

One significant provision of the Act, known as the "net income limitation," places a cap on the amount of a producer's windfall profit that may be taxed each year: "The windfall profit on any barrel of crude oil shall not exceed 90 percent of the net income attributable to such barrel." § 4988(b)(1). The net income attributable to each barrel is the taxable income derived from the oil removed from a particular property for a given year divided by the number of barrels from that property taken into account for that year. § 4988(b)(2).[4]

Congress specifically has provided that, for federal income tax purposes, the windfall profit tax *is* deductible. 26

---

[1] See Joint Committee on Taxation, General Explanation of the Crude Oil Windfall Profit Tax Act of 1980, 96th Cong., 2d Sess., 6 (Jt. Comm. Print 1981); S. Rep. No. 96–394, p. 6 (1979); H. R. Rep. No. 96–304, p. 4 (1979).

[2] If the oil is converted into a refined product before it is sold, or if it is removed from the producer's premises before it is sold, the oil is assigned a "constructive sales price," 26 U. S. C. § 4988(c)(3), which is "the representative market or [field] price of the oil . . . before conversion or transportation." 26 CFR § 1.613–3(a) (1988).

[3] The Act defines "windfall profit" as "the excess of the removal price of the barrel of crude oil over the sum of—(1) the adjusted base price of such barrel, and (2) the amount of the severance tax adjustment with respect to such barrel provided by section 4996(c)." 26 U. S. C. § 4988(a). The "adjusted base price" is derived from the price of the oil in 1979, adjusted for inflation. § 4989. The "severance tax adjustment" is the amount by which any severance tax imposed on the oil exceeds the severance tax that would have been imposed if the oil had been valued at its adjusted base price. § 4996(c).

[4] The annual taxable income for an oil-producing property is determined by reference to § 613(a) of the Internal Revenue Code of 1954, 26 U. S. C. § 613(a). See § 4988(b)(3)(A).

U. S. C. § 164(a)(4) (1982 ed., Supp. V). Although Congress may have assumed that "the windfall profit tax generally would be deductible under State income taxes," see H. R. Rep. No. 96–304, p. 9 (1979), the Act does not *require* a State, in imposing a tax, to allow the deduction.

## B

New Jersey's Corporation Business Tax Act, N. J. Stat. Ann. § 54:10A–1 *et seq.* (West 1986), imposes a tax on a portion of the "entire net income" of a corporation "for the privilege of doing business, employing or owning capital or property, or maintaining an office in this State." § 54:10A–2. For a corporation doing business both within and outside New Jersey, the portion of the "entire net income" to be taxed is determined according to a three-factor formula concerning property, receipts, and payroll. The formula calls for the average of three ratios: in-state property to total property; in-state to total receipts; and in-state to total wages, salaries, and other forms of employee compensation. § 54:10A–6. Cf. *Moorman Mfg. Co.* v. *Bair,* 437 U. S. 267 (1978).

Under the Corporation Business Tax Act, a corporation's "entire net income" is presumptively the same as its federal taxable income "before net operating loss deduction and special deductions." § 54:10A–4(k). The statute also provides: "Entire net income shall be determined without the exclusion, deduction, or credit of . . . [t]axes paid or accrued to the United States on or measured by profits or income." *Ibid.* The New Jersey Legislature adopted this "add-back" provision in 1958, long before Congress enacted the windfall profit tax in 1980. 1958 N. J. Laws, ch. 63. See 107 N. J. 307, 313, 526 A. 2d 1029, 1032 (1987).

## C

In reporting to New Jersey its "entire net income" for 1980 and 1981, each of the appellants did not "add back" the

amount of its federal windfall profit tax. In effect, then, each appellant claimed a deduction for that tax from its "entire net income." As a result, appellee, the Director of the New Jersey Division of Taxation, assessed deficiencies.[5] Appellants then brought suit against appellee in the Tax Court of New Jersey.[6] They contended, first, that the windfall profit tax was not a "tax on or measured by profits or income," within the meaning of the add-back provision, and, second, that a contrary construction of the add-back provision would contravene the Federal Constitution.

The Tax Court rejected these contentions and affirmed the deficiency assessments. 7 N. J. Tax 51 (1984). A consolidated motion for reconsideration was denied. 7 N. J. Tax 275 (1985). The Appellate Division of the Superior Court of New Jersey reversed, holding that the windfall profit tax was not a tax on or measured by profits or income, and, therefore, that it could be deducted from entire net income. 208 N. J. Super. 201, 505 A. 2d 186 (1986).

The Supreme Court of New Jersey, in its turn, reversed and reinstated the Tax Court's judgment. 107 N. J. 307, 526 A. 2d 1029 (1987). The five participating justices in a unanimous opinion held that the windfall profit tax is a tax measured by "profits or income" for the purposes of the add-back provision. The court first observed that there obviously was no significant legislative intent on the point, given the fact that the add-back provision predated the windfall profit tax by over 20 years. *Id.*, at 313, 526 A. 2d, at 1032. Lacking evidence of legislative intent, the court went on to reason that the windfall profit tax was a tax on "income" or "profits" as a matter of both ordinary usage and "economic sense."

---

[5] At issue in these cases are the 1980 taxes of all 13 appellants and the 1981 taxes of 5 of them. Appellee has deferred action on the 1981 taxes of the other 8 appellants pending the final outcome of this litigation.

[6] The Tax Court consolidated 14 separate complaints raising identical issues. See 7 N. J. Tax 51, 53 (1984). Thirteen of those fourteen original plaintiffs remain parties to this litigation.

*Id.*, at 324, 331, 526 A. 2d, at 1038, 1042. The court noted that the windfall profit tax, by its terms, is limited to "that increment of [an oil producer's] income representing the excess of the uncontrolled price of oil over the controlled price." *Id.*, at 326, 526 A. 2d, at 1040. Also, because of the net income limitation provision, the court concluded that the amount taxed under the windfall profit tax cannot exceed a producer's "net income per barrel." *Id.*, at 328, 526 A. 2d, at 1041. For these reasons, the court found it appropriate to classify the windfall profit tax as measured by income or profits.

Having determined that the add-back provision applied to the windfall profit tax, the court rejected appellants' federal constitutional challenge. "Because the denial of a deduction for the [windfall profit tax] was not based on the interstate nature of [appellants'] businesses and did not burden out-of-state companies, consumers, or transactions while favoring in-state activities, the disallowance did not discriminate against interstate commerce." *Id.*, at 338, 526 A. 2d, at 1046.

Appellants now press their federal constitutional claims in this Court. After first seeking the views of the Solicitor General of the United States, 484 U. S. 942 (1987), we noted probable jurisdiction. 486 U. S. 1004 (1988).

## II

In *Complete Auto Transit, Inc.* v. *Brady*, 430 U. S. 274 (1977), this Court sustained a state tax "against Commerce Clause challenge when the tax is applied to an activity with a substantial nexus with the taxing State, is fairly apportioned, does not discriminate against interstate commerce, and is fairly related to the services provided by the State." We repeatedly have applied this principle in subsequent cases, most recently this Term in *Goldberg* v. *Sweet*, 488 U. S. 252 (1989). See also *id.*, at 260, n. 12 (citing other applications of the principle). Appellants do not dispute the soundness of

the *Complete Auto* standard or the propriety of its application here. See Brief for Appellants 21. Rather, they argue that the New Jersey Corporation Business Tax, in denying them a deduction for windfall profit tax payments, fails each of the four prongs of the *Complete Auto* test. We disagree.

### A

There can be no doubt that New Jersey has "a substantial nexus" with the activities that generate appellants' "entire net income," including oil production occurring entirely outside the State. Each appellant's New Jersey operations are part of an integrated "unitary business," which includes the appellant's crude-oil production. Reply Brief for Appellants 3. Consequently, there exists a "clear and sufficient nexus between [each] appellant's interstate activities and the taxing State." *Exxon Corp.* v. *Wisconsin Dept. of Revenue*, 447 U. S. 207, 225 (1980). That New Jersey denies a deduction for windfall profit tax does not change this conclusion. Denying a deduction for a cost associated with the production of oil cannot alter the fact that New Jersey has a substantial connection to the oil-producing activity, by virtue of the determination that this activity is conducted by a unitary business.

### B

Nor has New Jersey imposed upon appellants an unfairly apportioned tax. New Jersey employs an apportionment formula that averages the percentages of in-state property, receipts, and payroll. See Part I-B, *supra*. We have expressly approved this apportionment formula in the past. See, *e. g.*, *Container Corp. of America* v. *Franchise Tax Board*, 463 U. S. 159, 170 (1983). Indeed, this three-factor formula "has become . . . something of a benchmark against which other apportionment formulas are judged." *Ibid.*

The use of this formula is not invalid as applied to appellants simply because New Jersey denies a deduction for windfall profit tax payments. Appellants contend other-

wise, asserting that the windfall profit tax is an exclusively out-of-state expense because it is associated with the production of oil outside New Jersey. They argue that the denial of a deduction for an out-of-state expense causes a State to tax more than its fair share of a unitary business' income. Brief for Appellants 4, 15.

Appellants, however, underestimate the fact that, for apportionment purposes, it is inappropriate to consider the windfall profit tax as an out-of-state expense. Rather, just as each appellant's oil-producing revenue—as part of a unitary business—is not confined to a single State, *Exxon Corp.*, 447 U. S., at 226; Brief for Appellants 3, so too the costs of producing this revenue are unitary in nature. See *Container Corp.*, 463 U. S., at 182 (the costs of a unitary business cannot be deemed confined to the locality in which they are incurred). Thus, when a State denies a deduction for a cost of a unitary business, the resulting net figure is still a unitary one, which a State may legitimately decide to apportion according to the standard three-factor apportionment formula.[7]

It may be that the application of this formula to appellants results in a somewhat "imperfect" measure of the New Jersey component of their unitary net income. *Id.*, at 183. But this fact alone does not render the tax on appellants unlawful. "The Constitution does not 'invalidat[e] an apportionment formula whenever it *may* result in taxation of some income that did not have its source in the taxing State.'"

---

[7] Appellee contends that the windfall profit tax is not "site-specific" because three essential attributes of the tax do not depend on any particular location: the calculation of "removal price" (which may be constructed from market price of the oil in places far from the site at which the oil was removed from the ground); the inflation-adjustment factor; and the net income limitation. See Brief for Appellee 26–33. Whatever the merits of these contentions, we think it is unnecessary to reach them. For fair-apportionment purposes, the relevant question is whether the windfall profit tax is a cost of a unitary business, rather than what the attributes of that cost may be.

*Id.*, at 169–170, quoting *Moorman Mfg. Co.* v. *Bair*, 437 U. S., at 272 (emphasis added in *Container Corp.*). On the contrary, as we have said repeatedly, in order to show unfair apportionment, a taxpayer "must demonstrate that there is no rational relationship between the income attributed to the State and the intrastate values of the enterprise" (internal quotation marks omitted). *Container Corp.*, 463 U. S., at 180. Given the unitary nature of appellants' oil-producing activities, coupled with New Jersey's use of the benchmark apportionment formula, appellants have not met this burden.[8]

## C

Even if a tax is fairly apportioned, it may discriminate against interstate commerce. *Westinghouse Electric Corp.* v. *Tully*, 466 U. S. 388, 398–399 (1984). As our precedents show, a tax may violate the Commerce Clause if it is facially discriminatory, has a discriminatory intent, or has the effect of unduly burdening interstate commerce. See generally Smith, State Discriminations against Interstate Commerce, 74 Calif. L. Rev. 1203, 1239 (1986). In *Tully*, for example, we considered a New York income tax provision that expressly provided a tax credit for shipping products from New York rather than other States. Although the tax was fairly apportioned, the tax credit, "on its face, [was] designed to have discriminatory economic effects" and thus was invalid under the Commerce Clause. 466 U. S., at 406–407.

Of course, a tax provision need not be facially discriminatory in the *Tully* sense in order to violate the Commerce Clause. For example, in *Bacchus Imports, Ltd.* v. *Dias*, 468

---

[8] We note, too, that if every State denied a deduction for windfall profit tax payments while applying the three-factor formula, the result would not be equivalent to an unapportioned tax, imposed by a single State on an oil company's entire net income. In other words, "no multiple taxation would result" from more than one State's following New Jersey's lead. See *Goldberg* v. *Sweet*, 488 U. S. 252, 260–265 (1989) (discussing a tax to which no apportionment formula was applied).

U. S. 263 (1984), a Hawaii statute exempted from the State's liquor tax a brandy distilled from the root of a shrub indigenous to Hawaii. Because this was a local product, the tax exemption did not need to be drafted explicitly along state lines in order to demonstrate its discriminatory design.

*Bacchus Imports* also involved a tax exemption for fruit wine. Although this exemption was general in nature and did not specify an indigenous product, there was evidence that it was enacted to promote the local pineapple-wine industry. *Id.*, at 270–271. Thus, because the exemption was motivated by an intent to confer a benefit upon local industry not granted to out-of-state industry, the exemption was invalid.

Finally, *American Trucking Assns., Inc.* v. *Scheiner*, 483 U. S. 266 (1987), concerned, among other things, an unapportioned Pennsylvania axle tax on the use of Pennsylvania highways by trucks over 26,000 pounds. Although this "flat" tax applied to both in-state and out-of-state trucks, it nonetheless had a discriminatory effect by exerting "an inexorable hydraulic pressure on interstate businesses to ply their trade within the State that enacted the measure rather than 'among the several States,'" *id.*, at 287, quoting U. S. Const., Art. I, § 8, cl. 3. See also *Halliburton Oil Well Co.* v. *Reily*, 373 U. S. 64, 72 (1963) (Louisiana statute had the discriminatory effect of imposing a greater tax on the same goods if they were manufactured outside Louisiana than if they were manufactured within the State, thereby creating an incentive to locate the manufacturing process within the State).

New Jersey's add-back provision, however, does not contravene any of the principles articulated in these cases. It obviously is not facially discriminatory in the *Tully* sense, as there is no explicit discriminatory design to the tax. Nor does it apply exclusively to a localized industry, as in *Bacchus Imports*. Instead, the add-back provision applies generally to any federal tax "on or measured by income or prof-

its." Thus, it includes the federal income tax, as well as the windfall profit tax.[9] The federal income tax, of course, applies to corporate activity throughout the Nation. Consequently, what could be said of the statute in *Bacchus Imports* cannot be said of the add-back provision: that it discriminates on the basis of geographic location. See 468 U. S., at 271.

Appellants, it seems to us, miss this essential point. They argue: "The question here is whether a state may single out for special tax burdens a form of business activity that is conducted only in other jurisdictions." Brief for Appellants 44. But this question is *not* presented in this litigation. The add-back provision does not single out the windfall profit tax for a deduction denial, and we need not consider here whether a statute that did so would impermissibly discriminate against interstate commerce.

Moreover, appellants concede that no discriminatory motive underlies the add-back provision. Tr. of Oral Arg. 21. Nor does the add-back provision exert a pressure on an inter-

---

[9] Appellants also contend that the windfall profit tax is not "comparable" to the federal income tax. Brief for Appellants 35. But we certainly do not find the State's treatment of the windfall profit tax as "on or measured by income or profits" irrational or arbitrary. In significant respects, the windfall profit tax is similar to a tax on income. First, by taxing only the difference between the deregulated and regulated price for the oil, the windfall profit tax was intended to reach only the excess income derived from oil production as a result of decontrol. H. R. Rep. No. 96–304, p. 7 (1979). Second, the net income limitation exists precisely to assure that the tax is imposed only upon above-cost receipts. S. Rep. No. 96–394, p. 29 (1979). Moreover, although the Act itself characterizes the windfall profit tax as an "excise tax," 26 U. S. C. § 4986(a), the Internal Revenue Service states that the tax's "structure and computation bear more resemblance to an income tax." IRS Manual Supplement—Windfall Profit Tax Program, 42 RDD-57 (Rev. 3) ¶ 2.01 (Aug. 28, 1987), reprinted in 2 CCH Internal Revenue Manual—Audit, p. 7567 (1987). Because the IRS believes that the windfall profit tax resembles an income tax, it surely is not irrational for New Jersey to classify the windfall profit tax, along with the federal income tax, as part of a general provision relating to federal taxes "on or measured by income or profits."

state business to conduct more of its activities in New Jersey. Denying a deduction for windfall profit tax payments cannot create oil reserves where none exist and therefore cannot be considered an incentive for oil producers to move their oil-producing activities to New Jersey. Given these attributes of the add-back provision, it is difficult to see how it unconstitutionally discriminates against interstate commerce.

Appellants nonetheless claim that the add-back provision, by denying a deduction for windfall profit tax payments, discriminates against oil producers who market their oil in favor of independent retailers who do not produce oil. But whatever disadvantage this deduction denial might impose on integrated oil companies does not constitute discrimination against interstate commerce. Appellants operate both in New Jersey and outside New Jersey. Similarly, nonproducing retailers may operate both in New Jersey and outside the State. Whatever different effect the add-back provision may have on these two categories of companies results solely from differences between the nature of their businesses, not from the location of their activities. See *Exxon Corp.* v. *Governor of Maryland*, 437 U. S. 117, 125–129 (1978) (prohibiting oil producers from retailing oil in Maryland does not impermissibly burden interstate commerce because independent interstate retailers still may compete with purely local retailers). In this respect, we agree with the analysis of the New Jersey Supreme Court. 107 N. J., at 337–338, 526 A. 2d, at 1046.[10]

---

[10] The Solicitor General of the United States has suggested that denying a deduction for windfall profit tax payments might impermissibly give appellants an incentive to shift operations from oil production, which does not occur in New Jersey, to activities that do occur in New Jersey. Brief for United States as *Amicus Curiae* 18. But even if this deduction denial caused appellants to shift from oil production, there is no evidence that appellants would shift to other New Jersey activities, rather than non-oil-producing activities outside New Jersey. Indeed, precisely because the deduction denial results in a larger New Jersey tax for appellants, it creates some incentive for appellants to move their operations out of that

For all these reasons, we conclude that the add-back provision does not discriminate against interstate commerce.

D

There is also no doubt that New Jersey's Corporation Business Tax is "fairly related" to the benefits that New Jersey provides appellants, "which include police and fire protection, the benefit of a trained work force, and 'the advantages of a civilized society.'" *Exxon Corp.* v. *Wisconsin Dept. of Revenue*, 447 U. S., at 228, quoting *Japan Line, Ltd.* v. *County of Los Angeles*, 441 U. S. 434, 445 (1979). Appellants acknowledge, as they must, that New Jersey may impose a reasonable tax on a portion of their "unitary business" income. Brief for Appellants 3. That New Jersey denies a deduction for windfall profit tax payments "does not alter the fact that the . . . tax paid by [appellants] . . . is related to the advantages provided by the State which aid [each] appellant's business." *D. H. Holmes Co.* v. *McNamara*, 486 U. S. 24, 32 (1988).

In sum, then, the Corporation Business Tax imposed on appellants satisfies all four elements of the *Complete Auto* test, even considering that the add-back provision denies a deduction for windfall profit tax payments.

III

Appellants also contend that, by denying a deduction for windfall profit tax payments, the add-back provision violates the Due Process and Equal Protection Clauses of the Fourteenth Amendment. In light of the foregoing discussion, this contention is plainly meritless. First, appellants recognize that the *Complete Auto* test encompasses due process standards. Brief for Appellants 21; see also 1 J. Hellerstein,

State. Thus, in the absence of discriminatory intent or a statute directed specifically at economic activity that occurs only in a particular location (as in *Bacchus Imports*), a deduction denial does not unduly burden interstate commerce just because the deduction denied relates to an economic activity performed outside the taxing State.

State Taxation ¶ 4.8, p. 123 (1983). Accordingly, having determined that the Corporation Business Tax passes all four prongs of the *Complete Auto* test, we also conclude that it does not violate due process.

Second, although some forms of discriminatory state taxation may violate the Equal Protection Clause even when they pose no Commerce Clause problem, see *Metropolitan Life Ins. Co. v. Ward*, 470 U. S. 869, 881 (1985), the add-back provision is not among them. In contrast to *Ward*, there is no discriminatory classification underlying the add-back provision. Moreover, there is unquestionably a rational basis for the State's refusal to allow a deduction for federal windfall profit tax.

IV

There being no constitutional infirmity to the add-back provision as authoritatively construed by the Supreme Court of New Jersey, the judgment of that court is affirmed.

*It is so ordered.*

JUSTICE O'CONNOR took no part in the consideration or decision of these cases.

JUSTICE SCALIA, concurring in the judgment.

I agree with the Court's determination that the New Jersey Corporation Business Tax does not facially discriminate against interstate commerce. See *ante*, at 76–77. Since I am of the view that this conclusion suffices to decide a claim that a state tax violates the Commerce Clause, see *American Trucking Assns., Inc. v. Scheiner*, 483 U. S. 266, 304 (1987) (SCALIA, J., dissenting), I would refrain from applying, for Commerce Clause purposes, the remainder of the analysis articulated in *Complete Auto Transit, Inc. v. Brady*, 430 U. S. 274, 279 (1977). To the extent, however, that the *Complete Auto* analysis pertains to the due process requirements that there be "a 'minimal connection' between the interstate activities and the taxing State, and a rational rela-

tionship between the income attributed to the State and the intrastate values of the enterprise," *Mobil Oil Corp.* v. *Commissioner of Taxes of Vermont*, 445 U. S. 425, 436–437 (1980) (citation omitted), I agree with the Court's conclusion that those requirements have been met. See *ante*, at 79–80. Finally, for the reasons set forth in Part III of the Court's opinion, I agree that the tax in this case does not violate the Equal Protection Clause.