William A. LANDRETH, Sr., et al., Plaintiffs,

v.

UNITED STATES of America, Defendant.

Civ. A. No. 4–89–373–A.

United States District Court, N.D. Texas, Fort Worth Division.

Feb. 8, 1991.

---

**10.** As we indicated in footnote 2, *supra,* there is dispute over the source of the Matrix products obtained by Drug Emporium.

John D. Mixon, J. Lyndell Kirkley, Brian D. Esenwein, Brown, Herman, Scott, Dean & Miles, Forth Worth, Tex., for plaintiffs.

Lillian D. Brigman, Atty. Tax Div., Dept. of Justice, Dallas, Tex., for defendant.

## MEMORANDUM OPINION

McBRYDE, District Judge.

This is a consolidated case encompassing the following styled and numbered actions:

(a) William A. Landreth, Sr., and Mary Adele Landreth Smith, co-trustees of the W.A. Landreth, Jr., trust under the will of Adele H. Landreth v. United States of America, CA4-89-373-A;

(b) Ameritrust Texas, N.A., trustee of the Martha L. Thompson trust v. United States of America, CA4-90-583-A;

(c) William L. Allison, Jr., v. United States of America, CA4-90-584-A;

(d) Thomas A. Allison v. United States of America, CA4-90-585-A;

(e) W.A. Landreth, Sr., v. United States of America, CA4-90-586-A;

(f) Ameritrust Texas, N.A., trustee of the W.H. Landreth trust v. United States of America, CA4-90-587-A;

(g) Hazel N. Collins v. United States of America, CA4-90-588-A;

(h) William L. Rainey v. United States of America, CA4-90-589-A;

(i) Edith A. Shelton v. United States of America, CA4-90-590-A;

(j) Ruth L. Winn v. United States of America, CA4-90-591-A;

(k) Bank One, Texas Trust, trustee of the Ann A. Smith Trust v. United States of America, CA4-90-592-A;

(l) Ameritrust Texas N.A., trustee of the William L. Rainey trust No. 2 v. United States of America, CA4-90-593-A;

(m) Ameritrust Texas N.A., trustee of the William L. Rainey trust No. 1 v. United States of America, CA4-90-594-A;

(n) Bank One, Texas trust, trustee of the Edward Landreth Smith trust v. United States of America, CA4-90-595-A;

(o) Bank One, Texas trust, trustee of the Jane Landreth Russell trust No. 1 v. United States of America, CA4-90-596-A; and

(p) Ameritrust Texas N.A., trustee of the Mary L. Smith trust v. United States of America, CA4-90-597-A.

This case is being tried, pursuant to the agreement of the parties, on stipulated facts set forth in a stipulation of facts filed December 11, 1990, in Civil Action No. 4-89-373-A. Except for the names of the various net profits interest owners, the stipulated facts are applicable to each of the above-styled and numbered actions. The parties have agreed that the same facts and legal issues are involved in each case and that all plaintiffs, as well as defendant, should be bound by the same judgment. The stipulated facts are as follows:

(1) The plaintiffs are holders of net profits interests of certain oil producing properties.

(2) A net profits interest holder is properly one who is otherwise liable for windfall profit tax.

(3) The net profits interest held by plaintiffs arises per the terms of contract 9036. A true copy of all relevant provisions of contract 9036 is attached to the stipulation of facts.

(4) Per the terms of contract 9036, the net profits interest is charged "with all taxes of every kind and nature (except income taxes) assessed upon or in connection with the properties which are the subject of this agreement ... and which taxes have not been paid by Stanolind."

(5) Stanolind Oil Company was the operator of these oil producing properties at the time contract 9036 was executed. AMOCO Oil Company (Tulsa, Oklahoma) is the current operator of these leases under contract 9036 and was for the tax periods in issue.

(6) Contract 9036 was executed in November of 1942.

(7) The periods in issue are taxable years 1981, 1982 and 1983.

(8) Plaintiffs' usual method of accounting for federal income tax purposes is the cash method.

(9) During the periods in issue, plaintiffs did not receive cash disbursements on their net profits interests in these properties.

(10) AMOCO Oil computed and withheld windfall profit tax attributable to plaintiffs' net profits interests. AMOCO turned the withheld amounts over to the government for plaintiffs' account, as required by statute and regulation, but did not "pay the tax" as one liable for the tax.

(11) The amount withheld and paid over by AMOCO is the correct amount of plaintiffs' liability should the government prevail in this controversy. The amounts withheld and paid over by AMOCO equal the amount of the refund to which plaintiffs would be entitled, plus interest, should the plaintiffs prevail in this controversy.

(12) Without a charge for windfall profit taxes, and the carried over prior period expenses, the properties would have a net profit.

(13) In arriving at distributions to net profits interest holders, AMOCO employed the following two step computation:

STEP ONE:

Gross revenue from working interest

less

Gross costs and charges & WPT total

---

equals

Total net profit
Multiplied by
Landreth interest

---

equals

Landreth net each well

(Where Gross Revenue is equal to Revenue Oil plus Revenue Gas; and Gross Costs and Charges are equal to Tangible Investment and Intangible Investment plus Expenses.)

STEP TWO:

Sum of all Landreth net each well
(ALL WELLS NET TOTAL)

less

Landreth net monthly statement
preparation charges

plus

Goldsmith field injection system

---

equals

Adjusted Landreth net

less

AMOCO's 2.5% interest of adjusted
Landreth net

---

equals

Monthly adjusted Landreth net

less

Any Landreth excess expenses from
prior accounting periods not previously
deducted from Landreth net

---

equals

Monthly Landreth net
distributable share

(14) The computations set forth in stipulation (13) above resulted in plaintiffs receiving no cash distribution from any of the properties for the years in issue.

(15) AMOCO performed a separate computation for purposes of determining the amount which it withheld and paid over as WPT to the government on behalf of plaintiffs. That computation was essentially step one in stipulation (13) above, except that no windfall profit tax was deducted from "Gross Revenue from Working Interest."

(16) True and correct copies of plaintiffs' claims for refund for 1981, 1982 and 1983 are attached to the stipulation of facts.

(17) Plaintiffs contend that they received no gross income (and therefore no net income) for the purposes of the application of the net income limitation to windfall profit tax because they received no cash payments from any of the properties during the years in issue.

The court adopts each of the stipulated facts, as set forth above, as a finding of fact by the court.

Jurisdiction and venue are not in dispute and the court finds that they are proper in this court. The only issue in this action is whether plaintiffs, who are cash basis taxpayers, were liable for windfall profit taxes in years in which they did not actually receive cash from oil and gas producing properties.

The windfall profit tax was an excise tax imposed on certain domestic crude oil. The provisions governing the tax were found in Internal Revenue Code §§ 4986–4998. The tax was in effect for crude oil removed from March 1980 and each calendar quarter thereafter until the tax was repealed on August 23, 1988. I.R.C. § 4996(b)(7); Omnibus Trade & Competitiveness Act of 1988, Pub.L. No. 100–418, § 1941, 102 Stat. 1107, 1322–24. It was imposed on the excess of the sales price for oil over the sum of the base price for that oil plus an adjustment for state severance taxes. The tax was limited to ninety percent of the net income attributable to each barrel of oil removed. I.R.C. § 4988(b) (the "net income limitation").

As set forth above, plaintiffs were net profits interest owners in certain oil and gas properties during 1981, 1982 and 1983, the tax years in question in this action. As net profits interest owners, plaintiffs were not entitled to receive any distribution of proceeds from the sale of oil or gas unless income from such sale exceeded expenses (including taxes other than income taxes) incurred in the production of the oil or gas plus expenses carried over from earlier production, if any. In 1981, 1982 and 1983, plaintiffs did not actually receive any proceeds of sale, not because current expenses exceeded profits, but because of the deduction of prior carried over expenses and windfall profit taxes withheld. Plaintiffs claimed that, because they received no gross income from the properties during the years in question, they had no net income from the properties and, hence, were not liable for windfall profit taxes in those years. In other words, because plaintiffs received no money under the terms of their contract, they maintained that they received no income for windfall profit tax purposes.

■ The amounts deducted or withheld by AMOCO from the sums payable to plaintiffs were determined according to the terms of contract 9036, which had been executed by their predecessors in interest. The contract, however, could not and did not override the provisions of the Internal Revenue Code. *Cf. Stockwell v. Commissioner*, 736 F.2d 1051, 1053 (5th Cir.1984) (holding that courts may not look to equity in tax matters but look only to the Internal Revenue Code or, if the statutory language is unclear, to legislative history). Plaintiffs' emphasis on the terms of the contract as determining or affecting tax liability is, therefore, a red herring.

■ Plaintiffs concede that had AMOCO not withheld (1) the carried over prior period expenses and (2) the amount it calculated to be due for windfall profit taxes, plaintiffs would have received a net profit from the properties in which they owned an interest. Because the Code does not provide for the deduction of either amount, the court finds that plaintiffs were liable for windfall profit taxes.

In determining windfall profit taxes, the Code first requires a determination of taxable income from the property for the taxable year attributable to taxable crude oil. I.R.C. § 4988(b)(2). That provision alone makes clear that the only relevant time period is the taxable year. Taxable income

is determined under I.R.C. § 613(a), which does not allow a net operating loss under § 172 of the Code to be deducted from gross income from the property in determining a taxpayer's taxable income from the property. Rev.Rul. 60–164, 1960–2 C.B. 264. Moreover, Treasury Regulation § 51.4988–2(b)(1)(ii) makes clear that amounts deductible in determining taxable income from the property must be attributable to taxable crude oil removed during that particular taxable year. Hence, carried over prior period expenses are not deductible in calculating taxable income for the purpose of the windfall profit tax.

Pursuant to I.R.C. § 4988(b)(3)(B)(ii), the deduction of windfall profit tax itself in determining net income is specifically prohibited. The Code could not be clearer: "No deduction shall be allowed for ... the tax imposed by § 4986...." I.R.C. § 4988(b)(3)(B)(ii).

For the reasons set forth herein, the court finds that defendant is entitled to judgment that plaintiffs in each of the consolidated actions take nothing. A separate judgment in accordance with this memorandum opinion will be rendered.