United States Court of Appeals,

Fifth Circuit.

No. 91–1468.

William A. LANDRETH, Sr., Mary Adele Landreth Smith, Co–Trustees of W.A. Landreth, Jr., Trust, under the Will of Adele H. Landreth, et al., Plaintiffs–Appellants,

v.

UNITED STATES of America, Defendant–Appellee.

June 18, 1992.

Appeals from the United States District Court for the Northern District of Texas.

Before REAVLEY, JOLLY and HIGGINBOTHAM, Circuit Judges.


REAVLEY, Circuit Judge:

The Landreth trust (Landreth)[1] received no cash distributions in 1981, 1982, or 1983 on its net profits interest (NPI)[2] in certain oil properties operated by Amoco Oil Company (Amoco). Landreth, a cash method taxpayer, argues that because it received no distributions, it had no gross income and thus no net income for purposes of the windfall profit tax. So Landreth claims that it is due a refund of all windfall profit tax paid for those tax years. The district court rejected Landreth's arguments and dismissed its refund claim. *Landreth v. United States,* 756 F.Supp. 284 (N.D.Tex.1991). We affirm.

---

[1]The claims of several similarly-situated taxpayer plaintiffs are consolidated in this appeal. All claims involve similar facts and identical legal issues, and we simplify our presentation of the case by discussing these issues only in reference to Landreth.

[2]Generally, an NPI, which derives from a working interest, entitles its owner to a percentage of the net profits from the operation of the property to which it is attached. This means that the NPI owner's share of contractually specified production expenses is subtracted from the owner's share of oil sale proceeds before any distribution is made to the owner. However, the owner is not liable for costs in excess of the percentage of oil sale revenues to which its interest is attached. *See* Christy E. Milner, *Resolving Producer/Interest Questions Under the Crude Oil Windfall Profit Tax,* 37 TAX.L. 607 (1984). So the NPI interest owner receives credit for excess operating expenses in any year in which these expenses exceed revenues, but remains conditionally obligated to pay these expenses in a future year, if any, when proceeds exceed expenses. Landreth agrees that an NPI is an interest subject to the windfall profit tax.

## I. BACKGROUND

Landreth's interest exists under a contract with Amoco as operator of the oil properties as to which Landreth claims refund. The contract requires Amoco each year to charge against Landreth's interest all taxes (other than income taxes) assessed upon the properties, current-year operating costs, and unpaid operating costs incurred in any previous year when costs exceeded revenues. As a result of these contractual charges, Landreth received no distributions under the contract in the years at issue. Landreth filed a claim with the Internal Revenue Service (IRS), seeking refund of the windfall profit tax that Amoco withheld and paid to the IRS on Landreth's account for those years.

Landreth's approach to windfall profit tax accounting would eliminate gross income in the years in question by deducting from Landreth's share of oil sale proceeds the amounts Amoco charged for both windfall profit tax and unpaid operating expenses accumulated from prior years. And with no gross income, Landreth could have no net income for purposes of computing the net income limitation to the windfall profit tax, and thus could have no windfall profit tax liability. The IRS, however, decided that Landreth was not entitled to deduct from gross income either the windfall profit tax or the excess production expenses Amoco charged from prior taxable periods. That decision prompted this suit.

The district court agreed that Landreth received no cash distribution during the relevant tax periods because the amount of windfall profit tax that Amoco withheld, plus the operating expenses that Amoco carried over from prior accounting periods, exceeded oil sale proceeds. *Landreth,* 756 F.Supp. at 286. However, the court concluded that, "[b]ecause the Code does not provide for the deduction of either amount ..., [Landreth is] liable for windfall profit taxes." *Id.* at 287. Landreth appeals.

## II. DISCUSSION

Congress enacted the Crude Oil Windfall Profit Tax Act of 1980 (the Act), I.R.C. §§

4986–98, in conjunction with its deregulation of oil prices. The Act's title is misleading. The tax imposed by the Act is not a tax on profits or income,[3] as is the federal income tax that is codified in I.R.C. subtitle A,[4] and therefore liability under the Act does not directly depend upon the profitability or income of the producer or interest owner.[5] Rather, it is an excise tax, a tax that burdens the exercise of one or more of the powers incident to ownership. *See Bromley v. McCaughn,* 280 U.S. 124, 137–38, 50 S.Ct. 46, 48, 74 L.Ed. 226 (1929); Mangum, *supra* note 5, at 768.

Congress levied this tax on the difference between the deregulated sale price of oil and the regulated price that would have applied had deregulation not occurred. *Amerada Hess,* 109 S.Ct. at 1619; *see also* Barry R. Miller & Dan G. Easley, *The Windfall Profit Tax—An Overview,* 12 ST.MARY'S L.J. 414, 415 & n. 2 (1980). The Act taxes the producer's right to sell oil for more than the regulated price by taxing the removal of oil from the producer's property. I.R.C. § 4986(a); *see* Mangum, *supra* note 5 at 767–68, n. 4. The Act includes a provision, called the "net income limitation," which prevents production from being taxed beyond the point of profitability. The net income limitation has the effect of capping taxable windfall profit at ninety percent of the net income from the property, as net income is defined for purposes of section 4988(b)(1). *See* Rev.Rul. 85–79, 1985–1 C.B. 337 (explaining operation of net income limitation).

Section 4988(b)(2) defines net income per barrel as "the taxable income derived from the oil

---

[3]Profits are taxed as income under I.R.C. § 63.

[4]We note, however, that the windfall profit tax is similar to an income tax in its "structure and computation." *See Amerada Hess Corp. v. Director, Div. of Taxation, New Jersey Dep't of Treasury,* 490 U.S. 66, 109 S.Ct. 1617, 1623 n. 9, 104 L.Ed.2d 58 (1989), *quoting* I.R.S. Manual Supplement—Windfall Profit Tax Program, 42 RDD–57 (Rev. 3) para. 2.01 (August 28, 1987), *reprinted in* II CCH Internal Revenue Manual—Audit, p. 7567. Presumably because of this similarity, Landreth correctly places controlling emphasis on the distinction "between the income of the Taxpayers from the properties and the income of the properties themselves."

[5]Taxation under the Act depends only upon the classification of oil, the type of producer, and the selling price of the oil. *See* Paul Mangum, *Evolution of the Crude Oil Windfall Profit Tax—An Examination of Recent Changes,* 13 ST.MARY'S L.J. 767, 768 (1982) (explaining basis of windfall profit taxation).

removed from a particular property for a given year divided by the number of barrels from that property taken into account for that year." Treas.Reg. § 51.4988–2(b)(1)(ii) requires that taxable income be computed according to I.R.C. section 613(a), subtracting certain expenses from the property's gross income. Gross income from the property is the amount for which the taxpayer sells the oil in the immediate vicinity of the well, minus any rents or royalties paid or incurred by the taxpayer in respect to the property. Treas.Reg. § 1.613–3(a).

A. DEDUCTIBILITY OF THE WINDFALL PROFIT TAX

The net income limitation circumscribes windfall profit tax liability according to the profitability of production. Landreth would define income under the net income limitation as it is defined under I.R.C. subtitle A, which codifies the taxes imposed on income. Indeed, for the purpose of the tax on income, the windfall profit tax is already deductible under I.R.C. section 164.[6] The I.R.C. provisions governing computation of the windfall profit tax, however, and the associated regulations interpreting the net income limitation, dispose of Landreth's contention that the tax itself is deductible from section 4988 income.

Section 4988(b)(3)(B) states that, in calculating taxable income from the property, "[n]o deduction shall be allowed for ... the tax imposed by section 4986," the windfall profit tax. And the associated Treas.Reg. § 51.4988–2(b)(1)(ii) computes taxable income by reducing the property's gross income "by all allowable deductions attributable to the production of taxable crude oil ... *except windfall profit tax* " (emphasis added). *See also* Rev.Rul. 85–79, 1985–1 C.B. 337 (explaining rationale for nondeductibility of windfall profit tax in computing section 4988 net income). I.R.C. provisions and regulations pertaining specifically to the windfall profit tax of I.R.C. subtitle D govern the definition of income for the purposes of that tax. Those regulations are set forth in Treas.Reg. § 51.4988–2(b)(1)(ii) and, by reference, I.R.C. § 613–3(a). We find no evidence that Congress

---

[6]The Act provides for a deduction of the windfall profit tax from income. Pub.L. No. 96–223, § 101(b), 94 Stat. 229 (1980); *see* S.REP. No. 394, 96th Cong., 2nd Sess. 30 (1980), *reprinted in* 1980 U.S.C.C.A.N. 410, 439.

intended for the net income limitation either to change the windfall profit tax from an excise tax to an income tax, or to incorporate the definition of income from I.R.C. subtitle A provisions that concern taxes imposed on income.

Nor do we find Rev.Rul. 83–185, 1983–2 C.B. 200, applicable. That ruling only addresses the question of how a cash method taxpayer is to account for barrels of oil removed in one year and sold in the next, and holds that the windfall profit tax applies to all of the oil removed from the premises in the taxable year, but is limited by the net income limitation to ninety percent of the income from oil actually sold from the property in the taxable year, regardless of when removed. Landreth does not raise an issue regarding the timing of the removal and sale of oil from the property.

B. DEDUCTIBILITY OF EXPENSES FROM PREVIOUS TAX PERIODS IN COMPUTING WINDFALL PROFIT TAX

Landreth also seeks to deduct previous tax period expenses carried forward into the tax periods at issue in this case in computing taxable income for purposes of the net income limitation to the windfall profit tax. The district court rejected Landreth's claim to this deduction, holding that:

> [i]n determining windfall profit taxes, the Code first requires a determination of taxable income from the property for the taxable year attributable to taxable crude oil. I.R.C. § 4988(b)(2) ... makes clear that the only relevant time period is the taxable year. Taxable income is determined under I.R.C. § 613(a), which does not allow a net operating loss under § 172 of the Code to be deducted from gross income from the property in determining a taxpayer's taxable income from the property. Moreover, Treasury Regulation § 51.4988–2(b)(1)(ii) makes clear that amounts deductible in determining taxable income from the property must be attributable to taxable crude oil removed during that particular taxable year.

*Landreth,* 756 F.Supp. at 287–88 (citations omitted). The district court understood section 51.4988–2(b)(1)(ii) correctly. A cash-method taxpayer loses the windfall profit tax deduction for production costs incurred during previous tax periods, to the extent that those costs exceed gross revenues from that period's production. The I.R.C. provides for the deduction of those costs under the income tax provision of section 172.

Rev.Rul. 83–185, 1983–2 C.B. 200, suggests that this deduction is not permissible for a cash-basis taxpayer:

> [G]enerally, under the cash receipts and disbursements method, in the computation of taxable income all items that constitute gross income are to be included for the tax year in which actually or constructively received. Expenditures are to be deducted for the taxable year in which actually made.

Landreth did not actually pay out production expenses, and the contract did not obligate Landreth to do so, at least to the extent those expenses exceeded oil sale revenues. At the same time, Amoco charged Landreth's interest with those prior years' excess expenses in years when Amoco took in sufficient oil sale revenues. Therefore Landreth paid, according to its contract, prior excess expenses in the first year when revenues were sufficient, regardless of the year in which the excess expenses were generated. Under this rationale, Landreth claims the deduction of prior years' expenses. But we must also reject this argument.

Treas.Reg. § 51.4988–2(b)(1)(ii) specifies the method for determining each year's taxable income from a particular property's production for purposes of the net income limitation. Taxable income results from subtracting all deductible production expenses *for that year* from the gross income associated with production from the property for that year. The Regulation so states.[7] Section 51.4988–2(b)(1)(ii) facially supplies no basis for deducting the allowable costs attributable to the production from earlier taxable years. While unpaid excess operating losses from one tax period generally may be carried forward into a subsequent period for purposes of federal income tax under I.R.C. § 172, we find no parallel provision that allows Landreth to carry forward excess operating expenses for purposes of the windfall profit tax net income limitation.

---

[7]Section 51.4988–2(b)(1)(ii) specifically requires that we "[d]etermine the taxpayer's taxable income from the property *attributable to taxable crude oil for the taxable year* by reducing the taxpayer's gross income from the property determined under paragraph (b)(1)(i) of this section by all allowable deductions attributable to the production of taxable crude oil that would be subtracted in determining taxable income from the property under section 613(a) allowable for the taxable year."

AFFIRMED.