ATTORNEYS FOR PETITIONERS:
**PHILIP A. WHISTLER**
**MARK J. RICHARDS**
**MATTHEW J. EHINGER**
ICE MILLER LLP
Indianapolis, IN

ATTORNEYS FOR RESPONDENT:
**ANNE L. COWGUR**
**TODD C. LADY**
**NATHAN J. HAGERMAN**
TAFT STETTINIUS & HOLLISTER LLP
Indianapolis, IN

# IN THE
# INDIANA TAX COURT

FILED
Oct 05 2016, 12:32 pm
CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

| | |
|---|---|
| SPENCER COUNTY ASSESSOR and GRASS TOWNSHIP ASSESSOR, ) ) ) | |
| Petitioners, ) ) | |
| v. ) ) | Cause No. 49T10-1306-TA-00057 |
| AK STEEL CORPORATION, ) ) | |
| Respondent. ) | |

ON APPEAL FROM A FINAL DETERMINATION OF
THE INDIANA BOARD OF TAX REVIEW

**FOR PUBLICATION**
**October 5, 2016**

FISHER, Senior Judge

Indiana Code § 6-1.1-3-23 provides integrated steel mills with the option of using "Pool 5" to value their personal property for purposes of taxation. The statute defines an "integrated steel mill" as "a person . . . that produces steel by processing iron ore and other raw materials in a blast furnace in Indiana[.]" See IND. CODE § 6-1.1-3-23(a)(3) (2008) (amended 2011). On appeal, the parties have asked the Court to examine whether the "in Indiana" language contained in that definition is constitutional. The Court finds that AK Steel has not shown a constitutional infirmity.

**FACTS**

THE STEEL INDUSTRY IN GENERAL

Carbon steel is produced at either an integrated steel mill or a "minimill." (See, e.g., Cert. Admin. R. at 481-84.) At an integrated mill: (1) coal is purified into a high-carbon fuel called coke; (2) the coke is then combined with iron ore and limestone in a blast furnace to produce pig iron; (3) the molten pig iron is combined with some steel scrap in a basic oxygen furnace to produce liquid steel; (4) the liquid steel is then cast into slabs; and (5) the slabs are processed, or "finished," into a variety of end products.[1] (See Cert. Admin. R. at 378-80, 383-90, 1009, 2024-2028.) At a minimill, however, liquid steel is made by melting scrap steel or scrap substitutes in an electric arc furnace. (See Cert. Admin. R. at 1009, 2029.) The liquid steel produced at a minimill is then cast into slabs that are finished into a variety of end products, just like the liquid steel produced at an integrated mill. (See Cert. Admin. R. at 2029.)

While integrated steel mills produce a higher quality carbon steel than minimills, they are no longer the more prevalent carbon steel producers. (See Cert. Admin. R. at 481, 1009.) Indeed, during the 1970's, 90% of all carbon steel was produced at integrated steel mills; now, however, only 40% of carbon steel is produced at integrated steel mills. (Cert. Admin. R. at 481.) That change in production resulted from the fact that the older technology utilized at an integrated steel mill (i.e., the blast furnace process) took "more steps (i.e., coke batteries, blast furnaces), [was] more capital

---

[1] The finishing of carbon steel slabs is, itself, a multi-step process. For instance, the slabs are first hot-rolled to a desired thickness and then coiled. (Cert. Admin. R. at 386-88.) The coils might then advance to an acid bath for "pickling." (Cert. Admin. R. at 389.) After that, the steel might then be cold-rolled, annealed, and galvanized. (Cert. Admin. R. at 389-90.) (See also Cert. Admin. R. at 250-51 ¶¶ 42-48.)

2

intensive, and traditionally require[d] more man-hours per ton" than the newer technology used to produce carbon steel at minimills (i.e., the electric arc furnace process). (Cert. Admin. R. at 2029.)

AK STEEL

AK Steel, headquartered in West Chester, Ohio, produces carbon steel. (Cert. Admin. R. at 377, 629.) AK Steel produces its steel at multiple facilities located throughout the Midwest. For instance, it has two blast furnace facilities, one in Middletown, Ohio and the other in Ashland, Kentucky. (Cert. Admin. R. at 378.) AK Steel also has a finishing facility in Rockport, Indiana (Grass Township, Spencer County), known as "Rockport Works." (Cert. Admin. R. at 632.)

Rockport Works opened in 1998. (Cert. Admin. R. at 1359 ¶ 44.) AK Steel constructed and equipped Rockport Works, at a cost of nearly $1.1 billion, because it no longer could finish all of its carbon steel, post hot-rolling, at its blast furnace facility in Middletown, Ohio. (See Cert. Admin. R. at 390-99, 1356 ¶ 17.) Consequently, AK Steel designed Rockport Works to receive, by rail, coils of its hot-rolled steel from the Middletown facility for final finishing. (Compare generally supra note 1 with Cert. Admin. R. at 392-98 and 1356-58 ¶¶ 21-31.) AK Steel received a significant property tax abatement/incentive package from Spencer County for locating Rockport Works in Rockport. (See Cert. Admin. R. at 1356 ¶ 16, 2845-49 (indicating that AK Steel's package was worth over $100,000,000 over a ten year period).)

THE BACKSTORY – WHY WE ARE HERE

The Legislation

In 2003, the Legislature enacted Indiana Code § 6-1.1-3-23. See P.L. 120-2003,

3

§ 1 (2003).  That statute provided that:

1) beginning with the March 1, 2003 assessment, an integrated steel mill could elect to value its "special equipment,"[2] for purposes of Indiana's personal property tax, in accordance with a particular valuation table designated as "Pool 5";

2) an integrated steel mill was "a person that produces steel by processing iron ore and other raw materials in a blast furnace"; and

3) if an integrated steel mill elected to use Pool 5, it agreed to not seek additional abnormal obsolescence adjustments on its personal property.

See generally P.L. 120-2003, § 1 (2003).  AK Steel reported the 2004 value of its personal property located at Rockport Works using Pool 5.  (See Cert. Admin. R. at 255 ¶ 69 (finding that AK Steel did so because it produced steel "by processing iron ore and other raw materials in a blast furnace").)

In 2005, the Legislature amended its statutory definition of "integrated steel mill" twice.  Those two amendments, which were given retroactive effect to January 1, 2004, altered the definition of an integrated steel mill to read "a person, including a subsidiary of a corporation, that produces steel by processing iron ore and other raw materials in a

---

[2] "Special integrated steel mill equipment" was, and continues to be, defined as "depreciable personal property, other than special tools and permanently retired depreciable personal property[ ] that:  (i) is owned, leased, or used by an integrated steel mill or an entity that is at least fifty percent (50%) owned by an affiliate of an integrated steel mill; and (ii) falls within Asset Class 33.4 as set forth in IRS Rev. Proc. 87-56, 1987-2, C.B. 647[.]"  Compare IND. CODE § 6-1.1-3-23(a)(7)(A) (2003) with IND. CODE § 6-1.1-3-23(b)(7) (2016).  In its final determination, the Indiana Board explained that the assets covered by IRS Rev. Proc. 87-56, 1987-2, C.B. 647, Asset Class 33.4 included:

> assets used in the smelting, reduction, and refining of iron and steel from ore, pig, or scrap; the rolling, drawing and alloying of steel; the manufacture of nails, spikes, structural shapes, tubing, wire, and cable.  Includes assets used by steel service centers, ferrous metal forges, and assets used in coke production, regardless of ownership.  Also includes related land improvements and all special tools used in the above activities.

(Cert. Admin. R. at 254 ¶ 66.)

4

blast furnace in Indiana[.]"  See P.L. 228-2005, § 2 (2005); P.L. 246-2005, § 59 (2005).

Even though it did not have any blast furnaces in Indiana, AK Steel continued to report

the value of its personal property at Rockport Works using Pool 5.  (See, e.g., Cert.

Admin. R. at 257-58 ¶ 83 (indicating that AK Steel had initiated personal property tax

appeals prior to 2008, the year at issue in this case).)

    In 2008, the Legislature enacted a comprehensive non-code provision[3] that

stated:

> In enacting [Indiana Code §] 6-1.1-3-23, the general assembly finds the following:
>
> (1) The economy of northern Indiana has historically been heavily dependent upon:
>    (A) the domestic steel industry, particularly the integrated steel mill business, which produces steel from basic raw materials through blast furnace and related operations . . .
> (2) Northern Indiana is the only area of Indiana with integrated steelmaking facilities.
> (3) During the last thirty (30) years the domestic steel industry has experienced significant financial difficulties. More than one-half ( ½ ) of the integrated steel mills in the United States were shut down or deintegrated, with the remainder requiring significant investment and the addition of new processes to make the facilities economically competitive with newer foreign and domestic steelmaking facilities and processes.
>
>              *****
>
> (5) Given the economic conditions affecting older integrated steelmaking facilities, integrated steel mills claimed abnormal obsolescence in reporting the assessed value of equipment located at the integrated steelmaking facilities that began operations before 1970, thereby reporting the equipment's assessed value at far below thirty percent (30%) of the equipment's total cost (far below the "thirty percent (30%) floor" value generally applicable to equipment

---

[3] A non-code provision "'is one which, though enacted with a piece of legislation, is not codified within the Indiana Code.  Such . . . provisions[, however,] are appropriately considered by a court when interpreting [] statute[s].'"  Izaak Walton League of Am. V. Lake Cnty. Prop. Tax Assessment Bd. of Appeals, 881 N.E.2d 737, 741 n.3 (Ind. Tax Ct. 2008) (citation omitted).

exhibiting only normal obsolescence under the current department of local government finance rules).

(6) Current law existing before [January 1, 2003,] obligates the taxpayers making abnormal obsolescence claims to pay personal property taxes based only on, and permits communities to determine property tax budgets and rates based only on, the reported personal property assessed values until the personal property appeals are resolved. Consequently, as a result of abnormal obsolescence claims, the property tax base of communities in northern Indiana is severely reduced for an indeterminate period (if not permanently). The prospect of future appeals and their attendant problems on an ongoing basis must be addressed.

(7) A new, optional method for valuing the equipment of integrated steel mills and entities that are at least fifty percent (50%) owned by an affiliate of an integrated steel mill ("related entities") . . . in northern Indiana is needed. That optional method:

   (A) recognizes the loss of value and difficulty in valuing equipment at integrated steelmaking facilities . . . that commenced operations decades ago and at the facilities of related entities;

   (B) recognizes that depreciable personal property used in integrated steelmaking . . . and by related entities is affected by different economic and market forces than depreciable personal property used in other industries and certain other segments of the steel industry and therefore experiences different amounts of obsolescence and depreciation; and

   (C) can be used to simply and efficiently arrive at a value commensurate with that property's age, use, obsolescence, and market circumstances instead of the current method and its potentially contentious and lengthy appeals. Such an optional method would benefit the communities where these older facilities are located.

(8) Such an optional method would be to authorize a fifth pool in the depreciation schedule for valuing the equipment of integrated steel mills[ and] related entities . . . that reflects all adjustments to the value of that equipment for depreciation and obsolescence, including abnormal obsolescence, which precludes any taxpayer electing such a method from taking any other obsolescence adjustment for the equipment, and which applies only at the election of the taxpayer.

(9) The purpose for authorizing the Pool 5 method is to provide a more simplified and efficient method for valuing the equipment of integrated steel mills . . . that recognizes the loss of value and unusual problems associated with the valuation of the equipment or facilities that began operations before 1970 in those industries in northern Indiana, as well as for valuing the equipment of related entities, to stabilize local property tax revenue by eliminating the

6

need for abnormal obsolescence claims, and to encourage th[at] industr[y] to continue to invest in northern Indiana, thereby contributing to the economic life and well-being of communities in northern Indiana, the residents of northern Indiana, and the state of Indiana generally.

(10) The specific circumstances described in this section do not exist throughout the rest of Indiana.

P.L. 131-2008, § 76 (2008). This non-code provision was given retroactive effect to January 1, 2003. P.L. 131-2008, § 76. The non-code provision was formally incorporated into Indiana Code § 6-1.1-3-23 in 2011.[4] See P.L. 220-2011, § 119 (2011).

Procedural Posture

For the 2008 assessment, AK Steel again reported the value of its personal property at Rockport Works using Pool 5.[5] (See, e.g., Cert. Admin. R. at 765-68.) The Spencer County Assessor rejected AK Steel's valuation, stating that its personal property "d[id] not qualify for Pool 5 filing[.]" (Cert. Admin. R. at 27.) AK Steel subsequently appealed to the Spencer County Property Tax Assessment Board of Appeals (PTABOA). (See Cert. Admin. R. at 60-61.) After conducting a hearing on AK Steel's appeal on October 11, 2010, the PTABOA issued a decision upholding the

---

[4] When the Legislature codified this provision's language, it placed it at the beginning of Indiana Code § 6-1.1-3-23 and designated it as a "new" paragraph (a); all existing paragraphs were then redesignated sequentially. Compare P.L. 131-2008, § 76 (2008) with IND. CODE § 6-1.1-3-23 (2011). For purposes of this opinion, the definition of integrated steel mill will be cited as Indiana Code § 6-1.1-3-23(a)(3). See IND. CODE § 6-1.1-3-23(a)(3) (2008). But see IND. CODE § 6-1.1-3-23(b)(3) (2011) (indicating that once the non-code provision was codified in 2011, the definition was redesignated as paragraph (b)(3)). Moreover, the Court will generically refer to the language first contained in the non-code provision and then later incorporated into Indiana Code § 6-1.1-3-23(a) as the "Preamble."

[5] At the same time, AK Steel also filed paperwork claiming entitlement to various abatement deductions. (See, e.g., Cert. Admin. R. at 798.)

Assessor's action.[6]  (See Cert. Admin. R. at 19-21.)

On December 9, 2010, AK Steel filed an appeal with the Indiana Board of Tax Review claiming that to the extent Indiana Code § 6-1.1-3-23 allowed only those integrated steel mills with blast furnaces in Indiana to use Pool 5, it was unconstitutional.  (See, e.g., Cert. Admin. R. at 4-13.)  The Indiana Board conducted a hearing on AK Steel's appeal on December 10, 2012.[7]

On June 7, 2013, the Indiana Board issued a final determination on AK Steel's appeal.  In that final determination, the Indiana Board explained that "except for the 'in Indiana' language[,]" AK Steel was, in all other respects, entitled to use Pool 5 under Indiana Code § 6-1.1-3-23.  (See Cert. Admin. R. at 260-61 ¶¶ 7, 10-11 (stating that:  1) AK Steel was a person that produced steel by processing iron ore and other raw materials in a blast furnace; and 2) the personal property located at Rockport Works was special equipment pursuant to IRS Rev. Proc. 87-56, 1987-2, C.B. 647, Asset Class 33.4).)  The Indiana Board further explained, however, that as an administrative agency, it did not have the authority to resolve AK Steel's constitutional challenge.  (See Cert. Admin. R. at 261-62 ¶¶ 15-17.)  As a result, the Indiana Board found itself "compelled" to affirm the PTABOA's decision that AK Steel was not eligible to claim the

---

[6] Before the PTABOA conducted its hearing, the Spencer County Assessor issued a notice that further increased the assessed value of AK Steel's personal property at Rockport Works.  (See Cert. Admin. R. at 26.)

[7] Prior to the Indiana Board's hearing, AK Steel, the Spencer County Assessor, the Grass Township Assessor, and the Spencer County Redevelopment Commission entered into a comprehensive settlement agreement that resolved the personal property tax disputes between AK Steel and Spencer County for all years other than 2008.  (See Cert. Admin. R. at 1426-1431.)  The settlement agreement also provided that if it was ultimately determined that AK Steel was not eligible to use Pool 5 for purposes of the 2008 assessment, the parties stipulated to both an assessed value and a permitted abatement deduction for AK Steel.  (See Cert. Admin. R. at 1427.)

benefits of Pool 5.  (Cert. Admin. R. at 262 ¶ 17.)

AK Steel subsequently initiated an original tax appeal, as did the Spencer County and Grass Township Assessors.  After consolidating the two appeals, the Court heard the parties' oral arguments on May 23, 2014.  Additional facts will be supplied as necessary.

## STANDARD OF REVIEW

Indiana Board final determinations are subject to review by this Court.  See generally Ind. Tax Court Rule 2(A); IND. CODE § 6-1.1-15-5(b) (2016).  Indiana Code § 33-26-6-6 sets out the scope and standard of the Court's review:  the Court shall find an Indiana Board final determination invalid when it is arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law; contrary to constitutional right, power, privilege, or immunity; in excess of or short of statutory jurisdiction, authority, or limitations; without observance of procedure required by law; or unsupported by substantial or reliable evidence.  IND. CODE § 33-26-6-6(e)(1)-(5) (2016).

When reviewing an Indiana Board final determination, the Court defers to the Indiana Board's factual findings as long as they are supported by substantial evidence; the Court, however, reviews all questions of law arising from the Indiana Board's factual findings de novo.  Stinson v. Trimas Fasteners, Inc., 923 N.E.2d 496, 498 (Ind. Tax Ct. 2010).  This case presents questions regarding the construction to be afforded to – and constitutionality of – Indiana Code § 6-1.1-3-23.  Because those are questions of pure law, they are matters reserved exclusively for judicial determination.  See id.  See also, e.g., Paul Stieler Enters., Inc. v. City of Evansville, 2 N.E.3d 1269, 1272 (Ind. 2014); Bd. of Comm'rs of Howard Cnty. v. Kokomo City Plan Comm'n, 330 N.E.2d 92, 95 (Ind.

9

1975); <u>Emmis Pub. Corp. v. Indiana Dep't of State Revenue</u>, 612 N.E.2d 614, 623 (Ind. Tax Ct. 1993).

## ANALYSIS

On appeal, AK Steel argues that the "in Indiana" language contained in Indiana Code § 6-1.1-3-23's definition of an integrated steel mill is unconstitutional. (<u>See</u> <u>generally</u> Resp't Br. Supp. Mot. Summ. J. ("AK Steel's Br.") at 21-36.)[8] The Assessors contend, however, that AK Steel's constitutional claims are moot because even without the "in Indiana" restriction, AK Steel does not qualify to use Pool 5 under Indiana Code § 6-1.1-3-23. (<u>See</u> <u>generally</u> Pet'rs' Br. Resp. Resp't Br. Supp. Mot. Summ. J. & Br. Supp. Pet'rs' V. Pet. Judicial Review of a Final Determination of the Indiana Bd. Tax Review ("Assessors' Br.") at 2-3, 11-12.) Accordingly, the Court will address the Assessors' argument first. <u>See</u> <u>generally</u> <u>Harlan Sprague Dawley, Inc. v. Indiana Dep't of State Revenue</u>, 605 N.E.2d 1222, 1232 (Ind. Tax Ct. 1992) (explaining that the Court has the duty to refrain from deciding constitutional questions if there are other grounds on which to base its holding).

I.

As previously stated, Indiana Code § 6-1.1-3-23 defines an integrated steel mill, for purposes of Pool 5, as "a person, including a subsidiary of a corporation, that produces steel by processing iron ore and other raw materials in a blast furnace in Indiana[.]" I.C. § 6-1.1-3-23(a)(3). The Assessors argue that even without the "in

---

[8] When it filed its written brief in this case, AK Steel moved for summary judgment but did not designate any evidence in support of that motion as required by Indiana Trial Rule 56(C). (<u>Compare</u> Resp't Mot. Summ. J., Resp't Br. Supp. Mot. Summ. J. ("AK Steel's Br.") <u>with</u> Ind. Trial Rule 56(C).) Later, AK Steel explained to the Court that it was relying on the contents of the certified administrative record to support its position. (<u>See, e.g.</u>, Resp't Surreply Supp. Mot. Summ. J. at 2.) Accordingly, the Court will perform its standard record review in this case. <u>See</u> <u>supra</u> pp. 9-10.

10

Indiana" restriction, AK Steel does not qualify to use Pool 5 under Indiana Code § 6-1.1-3-23. (See Assessors' Br. at 11-12.) More specifically, they explain that when the Legislature defined an integrated steel mill as a "person," it intended that term to mean "facility"; thus, because Rockport Works the facility does not "produce steel by processing iron ore and other raw materials in a blast furnace," it is not an integrated steel mill and AK Steel therefore cannot use Pool 5 to value the personal property located there.[9] (See Assessors' Br. at 2-3, 12-16.) The Court does not find this argument persuasive for the following reasons.

First, for purposes of Indiana's property tax scheme, a "person" is defined as "a sole proprietorship, partnership, association, corporation, limited liability company, fiduciary, or individual." IND. CODE § 6-1.1-1-10 (2003). The Legislature's definition of an integrated steel mill as a "person" in Indiana Code § 6-1.1-3-23 is therefore in harmony with this statute. See Blood v. Poindexter, 534 N.E.2d 768, 771 (Ind. Tax Ct. 1989) (explaining that it is presumed that in enacting a statute, the Legislature has full knowledge of existing legislation on the same subject matter).

Second, if the Legislature intended the word "person" to mean "facility," then how is the next phrase in the definition of an integrated steel mill, i.e., the "including a

---

[9] The Assessors explain that they arrived at this conclusion because:

1) Indiana Code § 6-1.1-3-23's Preamble repeatedly uses the phrase "integrated steel mill facilities";
2) by stating in the Preamble that "Northern Indiana is the only area of Indiana with integrated steelmaking facilities," the Legislature explicitly recognized that Rockport Works, which is located in Southern Indiana, was not an "integrated steel mill";
3) "[a] reference to a 'steel mill,' applied logically and given its ordinary meaning, is a reference to property"; and
4) the tax at issue in this case is a property tax.

(See Pet'rs' Br. Resp. Resp't Br. Supp. Mot. Summ. J. & Br. Supp. V. Pet. Judicial Review of a Final Determination of the Indiana Bd. Tax Review ("Assessors' Br.") at 12-15.)

11

subsidiary of a corporation," to be interpreted? Indeed, while that phrase makes sense in describing a "person," see I.C. § 6-1.1-1-10, it makes no sense in describing a "facility." See City of Carmel v. Steele, 865 N.E.2d 612, 618 (Ind. 2007) (stating that courts will not presume the Legislature intended statutory language to be applied illogically or in a way that would bring about an absurd result).

Third, the Legislature amended Indiana Code § 6-1.1-3-23 three times after its enactment in 2003. If the Assessors are correct in their contention that the Legislature made those amendments to clarify its intent more explicitly, (see, e.g., Assessors' Br. at 2, 4, 12, 15-16), then why did the Legislature not take advantage of those three opportunities to change the word "person" to "facility?"

For the three reasons above, the Assessors have not persuaded the Court that the word "person," as used in the definition of an integrated steel mill, means "facility." Thus, the Assessors have not succeeded in their argument that even without the "in Indiana" restriction, AK Steel does not qualify to use Pool 5 under Indiana Code § 6-1.1-3-23.[10] The Court must therefore address AK Steel's constitutional claims.

II.

AK Steel claims that the "in Indiana" language contained in Indiana Code § 6-1.1-3-23's definition of an integrated steel mill violates numerous provisions of both the U.S. and Indiana Constitutions. AK Steel bears an extremely high burden of proof on this claim, however, as that statutory language is presumed constitutional until clearly shown otherwise. See Sims v. U.S. Fid. & Guar. Co., 782 N.E.2d 345, 349 (Ind. 2003);

---

[10] This point is further supported by the fact that the parties have stipulated that the personal property located at I/N Tek and I/N Kote, two "stand-alone" steel finishing facilities in northern Indiana (i.e., neither has a blast furnace on the premises), was valued using Pool 5. (See, e.g., Cert. Admin. R. at 244-45 ¶¶ 1-7.)

12

UACC Midwest, Inc. v. Indiana Dep't of State Revenue, 629 N.E.2d 1295, 1299 (Ind.

Tax Ct. 1994).

## A. EQUAL PROTECTION

AK Steel claims that the "in Indiana" language contained in Indiana Code § 6-1.1-

3-23 is unconstitutional under the equal protection clause of the Fourteenth Amendment

to the U.S. Constitution.[11]  More specifically, it argues that

> there is no material functional or economic difference between AK
> Steel's personal property at Rockport Works and the equipment of
> other integrated steelmakers in the state that qualify for Pool No. 5.
> There is no rational basis for denying Pool No. 5 valuation to AK
> Steel – an integrated steelmaker – on grounds that its blast furnace
> is out-of-state, while concurrently . . . extending Pool No. 5 eligibility
> to entities that do not own a blast furnace anywhere, i.e.[,] I/N Tek
> and I/N Kote. . . . Pool No. 5's statutory purpose is to determine the
> depreciated value of steelmaking equipment for tax purposes. . . .
> [T]he location of a blast furnace has no rational bearing on this
> valuation question.  The in-state classification . . . is [therefore]
> arbitrary and irrational and . . . invalid[.]

(AK Steel's Br. at 30-31.)  See also supra note 10.

The Fourteenth Amendment to the U.S. Constitution provides that "[n]o State

shall . . . deny to any person within its jurisdiction the equal protection of the laws."  U.S.

CONST. amend XIV, § 1.  This provision "does not forbid classifications. It simply keeps

---

[11] AK Steel also claims that the "in Indiana" language violates Article 1, § 23 of the Indiana Constitution.  (See AK Steel's Br. at 29-31.)  That provision states that "[t]he General Assembly shall not grant to any citizen, or class of citizens, privileges or immunities, which, upon the same terms, shall not equally belong to all citizens."  IND. CONST. art. 1, § 23.  AK Steel's argument regarding this claim, however, merely quotes the text of Article 1, § 23 and then states, in conclusory fashion, that the equality provisions of both the federal and state constitutions have been violated.  (See AK Steel's Br. at 29-31; Resp't Reply Supp. Mot. Summ. J. & Resp. to Pet'rs' Br. at 25-30.)

While the rights guaranteed under Article 1, § 23 are identical to those guaranteed under the federal equal protection clause, Article 1, § 23 claims are subject to a different analysis than those under the federal equal protection clause.  See Collins v. Day, 644 N.E.2d 72, 75 (Ind. 1994); Haas v. South Bend Cmty. Sch. Corp., 289 N.E.2d 495, 501 (Ind. 1972).  To the extent AK Steel has not provided the Court with any such analysis, the Court will not undertake that task now.

governmental decisionmakers from treating differently persons who are in all relevant respects alike." Nordlinger v. Hahn, 505 U.S. 1, 10 (1992) (citation omitted). Consequently, under federal equal protection analysis, absent a showing that the challenged classification involves a suspect class or trammels on fundamental rights, the classification is presumed valid and will be upheld as long as it is rationally related to a legitimate state interest. City of Cleburne, Tex. v. Cleburne Living Ctr., 473 U.S. 432, 440 (1985).

The Preamble to Indiana Code § 6-1.1-3-23 explicitly provides the Legislature's rationale for creating Pool 5. Indeed, it explains that Indiana's integrated steel mills had been filing abnormal obsolescence claims[12] on their property, wreaking economic havoc on the local communities and their property tax bases. See supra pp. 5-7. (See also, e.g., Cert. Admin. R. at 1811-21.) The Legislature therefore created Pool 5 as a means to lessen the negative impact of such claims by eliminating the often contentious, protracted, and expensive process involved in adjudicating them. Pool 5 enables Indiana's integrated steel mills to receive immediate obsolescence adjustments on their personal property in exchange for waiving their rights to file and litigate larger abnormal obsolescence claims later; the local taxing units, in turn, are able to maintain more stable and consistent cash flows. Because all of the integrated steel mills that had been filing these abnormal obsolescence claims were located in northern Indiana and had their blast furnaces within the state, the "in Indiana" language was not arbitrary, but rationally related to Legislature's purpose for creating Pool 5. See supra pp. 5-7.

---

[12] An abnormal obsolescence claim may be granted when a taxpayer shows, among other things, an "impairment of desirability and usefulness [of its personal property] brought about by new inventions and improved processes for production[.]" 50 IND. ADMIN. CODE 4.2-4-8(a) (2008) (see http://www.in.gov/legislative/iac/) (emphasis added).

AK Steel makes much of the fact that I/N Tek and I/N Kote, two "stand-alone" steel finishing facilities located in northern Indiana, have been able to claim the benefit of Pool 5 despite the fact that neither has a blast furnace in Indiana. (See, e.g., AK Steel's Br. at 9, 26, 30.) Both of those entities, however, are owned by ArcelorMittal/Nippon Steel, which has a blast furnace in Indiana. (See, e.g., Cert. Admin. R. at 244-45 ¶¶ 1-7.) As such, I/N Tek and I/N Kote fall within Indiana Code § 6-1.1-3-23(a)(3)'s definition of an integrated steel mill: they are subsidiaries of a person that produces steel by processing iron ore and other raw materials in a blast furnace in Indiana. (Cert. Admin. R. at 244-45 ¶¶ 1-7.) See also I.C. § 6-1.1-3-23(a)(3). AK Steel is therefore not similarly situated to either I/N Tek and I/N Kote.

The Court finds that the "in Indiana" language is rationally related to the State's legitimate purpose for creating Pool 5 and that AK Steel has not demonstrated that it is being treated differently than similarly-situated taxpayers. Consequently, it finds no violation of AK Steel's federal equal protection guarantees.

## B. COMMERCE CLAUSE

The Commerce Clause of the United States Constitution authorizes Congress "[to] regulate Commerce . . . among the several states[.]" U.S. CONST. art. I, § 8, cl. 3. The purpose of the Commerce Clause "was to create an area of free trade among the several States." McLeod v. J. E. Dilworth Co., 322 U.S. 327, 330 (1944).

The Commerce Clause also prohibits taxation by a state in a manner that discriminates against or unduly burdens the interstate flow of articles of commerce, even when Congress has failed to legislate on the subject. Oklahoma Tax Comm'n v. Jefferson Lines, Inc., 514 U.S. 175, 179 (1995); Oregon Waste Sys., Inc. v. Dep't of

15

Envtl. Quality of Or., 511 U.S. 93, 98 (1994). This negative aspect of the Commerce Clause is referred to as the dormant Commerce Clause. See Jefferson Lines, 514 U.S. at 179. See also, e.g., H. P. Hood & Sons, Inc. v. Du Mond, 336 U.S. 525, 535 (1949) (explaining that the dormant Commerce Clause is designed to prohibit a state from attempting to advance its own commercial interests by curtailing the movement of articles of commerce, either into or out of the state).

A state tax will not be permitted under the dormant Commerce Clause if it 1) is not applied to an activity that has a substantial nexus with the taxing state; 2) is not fairly apportioned to activities within the taxing state; 3) discriminates against interstate commerce; or 4) is not fairly related to services provided by the taxing state. See Complete Auto Transit, Inc. v. Brady, 430 U.S. 274, 279 (1977). AK Steel has confined its argument to the third of these factors. (See AK Steel's Br. at 21-27.) Specifically, it argues that the "in Indiana" language contained in Indiana Code § 6-1.1-3-23 discriminates against interstate commerce on its face because "[t]he sole factor for [determining whether an entity can use Pool 5] – the location of [its] blast furnace – is [ ] based solely on state lines." (AK Steel's Br. at 25-26.) See also Amerada Hess Corp. v. Dir., Div. of Taxation, N.J. Dep't of Treasury, 490 U.S. 66, 75 (1989) (explaining that when challenging a state statute that imposes a tax, a taxpayer may claim that it is either discriminatory on its face, in its intent, or in its effect). This argument, however, misses the mark for the following reasons.

First, with the "in Indiana" language, Indiana Code § 6-1.1-3-23 does not expressly distinguish between entities that serve a principally interstate market/clientele and those that serve an intrastate market/clientele. See, e.g., Oregon Waste Sys., 511

U.S. at 99 (stating that discrimination against interstate commerce is the "differential treatment of in-state and out-of-state economic interests that benefits the former and burdens the latter"); Boston Stock Exchange v. State Tax Comm'n, 429 U.S. 318, 329 (1977) (stating that a state tax discriminates against interstate commerce when it provides a direct commercial advantage to local business). Indeed, under the unambiguous terms of the statute, both domestic and foreign integrated steel mills can claim the benefit of Pool 5 provided they have blast furnaces in Indiana.[13] Moreover, AK Steel has neither developed an argument, nor pointed the Court to any evidence in the administrative record, that indicates that entities like AK Steel who do not have their blast furnaces in Indiana have somehow suffered a "diminishment in the marketplace" as a result of the "in Indiana" language – for example, a reduction in production or a lack of access to interstate products, vendors, and consumers. (See AK Steel's Br. at 21-27; Resp't Reply Supp. Mot. Summ. J & Resp. to Pet'rs' Br. ("AK Steel's Reply Br.") at 14-20; Resp't Surreply Supp. Mot. Summ. J.)[14]

Second, while the "in Indiana" language may preclude entities like AK Steel from using Pool 5, it does not preclude them from seeking and receiving the tax benefit that is ultimately rewarded through Pool 5, i.e., abnormal obsolescence adjustments on their personal property located within the state. Instead, they must simply go through a

---

[13] In fact, the evidence in the administrative record reveals that none of Indiana's integrated steel mills are domestic companies. (See, e.g., Cert. Admin. R. at 6683, 8361-62, 9568 (indicating that U.S. Steel, Inspat Inland, Inc., and ArcelorMittal USA Steel, Inc. are all Delaware corporations).)

[14] The administrative record in this case contains over 10,000 pages. If there is evidence in the record that supports AK Steel's claim, it was up to AK Steel to call it to the Court's attention. See Scopelite v. Indiana Dep't of Local Gov't Fin., 939 N.E.2d 1138, 1145 (Ind. Tax. Ct. 2010) (explaining that the Court does not bear the burden of searching the administrative record to find evidence that supports a litigant's argument).

different channel to seek that benefit: an assessment appeal where they bear the burden of demonstrating that their personal property suffers from abnormal obsolescence. See, e.g., supra note 12; IND. CODE § 6-1.1-15-5 (2008). This difference accounts for the fact that the Legislature has recognized that Indiana's integrated steel mills are using a process and related equipment – the process that uses blast furnaces – that is antiquated and less desirable than newer processes, such as the electric arc furnace process. Compare supra pp. 2-3, 5-7 with supra note 12. See also City of Philadelphia v. New Jersey, 437 U.S. 617, 626-27 (1978) (explaining that differential treatment is permissible when "there is some reason, apart from . . . origin, to treat [entities] differently" (emphasis added)). For these reasons, AK Steel has not shown that the "in Indiana" language facially discriminates against interstate commerce. AK Steel's Commerce Clause challenge therefore fails.[15]

## C. DUE PROCESS

The Fourteenth Amendment to the U.S. Constitution not only guarantees equal protection under the law, but that no state shall "deprive any person of life, liberty, or property, without due process of law[.]" U.S. CONST. amend. XIV, § 1. Due process contains both procedural and substantive elements. Procedural due process requires that taxpayers be provided with notice and a meaningful opportunity to be heard before a tax liability is finally fixed. Nickey v. State of Mississippi, 292 U.S. 393, 396 (1934);

---

[15] AK Steel claims "[i]t is undisputed that [it] is being assessed higher property taxes on its special integrated steel mill equipment than its similarly situated competitors merely because its blast furnaces are not located in Indiana[ which] is precisely the form of interstate discrimination the Commerce Clause [is designed to] prevent[]." (AK Steel's Br. at 27.) This is nothing more than a repackaging of AK Steel's equal protection claim, which has already been rejected. Compare supra pp. 13-15 with Gen. Motors Corp. v. Tracy, 519 U.S. 278, 298 (1997) (indicating that any notion of discrimination against interstate commerce assumes a comparison of substantially similar entities).

18

Turner v. Wade, 254 U.S. 64, 67 (1920). Substantive due process requires that taxation not be arbitrary, oppressive, or unjust. Great N. Ry. Co. v. Weeks, 297 U.S. 135, 152 (1936); Lawrence v. State Tax Comm'n Miss., 286 U.S. 276, 282 (1932); Davidson v. City of New Orleans, 96 U.S. 97, 107 (1877) (Bradley, J., concurring).

AK Steel claims that denying it the use of Pool 5 solely on the basis that its blast furnace is not in Indiana violates its right to substantive due process. It states:

> Pool No. 5 ties the measure of personal property tax on special integrated steel mill equipment to the location of the steel company's blast furnace. For a steel manufacturer that otherwise qualifies under the statute, but with an out-of-state blast furnace, the limitation is a de facto tax on the out-of-state blast furnace. . . . There is no rational relationship between the measurement of the tax under the statute as limited by the "in Indiana" restriction and the value of AK Steel's personal property located in Indiana. . . . There was no rational legislative purpose for the "in Indiana" limitation other than to impermissibly measure the tax on Indiana-based personal property on the basis of an interstate characteristic entirely irrelevant to the tax base.

(AK Steel's Br. at 28-29.)

In order to claim that its substantive due process rights have been violated, AK Steel must demonstrate to the Court that the "in Indiana" language 1) infringes upon "fundamental rights [or] liberties which are, objectively, 'deeply rooted in this Nation's history and tradition[]' and 'implicit in the concept of ordered liberty,' such that 'neither liberty nor justice would exist if they were sacrificed[]'" or 2) is "arbitrary and unreasonable, having no substantial relation to the public health, safety, morals, or general welfare." Washington v. Glucksberg, 521 U.S. 702, 720-21 (1997) (citations omitted); Vill. Of Euclid, Ohio v. Ambler Realty Co., 272 U.S. 365, 395 (1926) (citations omitted). AK Steel seeks to have its claim resolved on the "arbitrary and unreasonable" showing. (See, e.g., AK Steel's Br. at 28; AK Steel's Reply Br. at 21 (stating that the

19

Legislature's "economic protectionist goal" in adopting the "in Indiana" language is "invidious and irrational").) See also Coniston Corp. v. Vill. of Hoffman Estates, 844 F.2d 461, 467 (7th Cir. 1988) (explaining that "arbitrary and unreasonable" has been interpreted to mean invidious or irrational).

"[G]overnmental action passes the rational basis test if a sound reason may be hypothesized. The government need not prove the reason to a court's satisfaction." Northside Sanitary Landfill, Inc. v. City of Indianapolis, 902 F.2d 521, 522 (7th Cir. 1990) (citations omitted). As previously explained, the reason the Legislature created Pool 5 was to specifically address and remedy the detrimental effects that Indiana's integrated steel mills' abnormal obsolescence claims had on the local property tax bases and communities. See supra p. 14-15. This reason is neither arbitrary nor unreasonable. Consequently, AK Steel's substantive due process claim fails.

## D. SPECIAL LAW

AK Steel also claims that Indiana Code § 6-1.1-3-23's "in Indiana" language violates Article 4, Section 22 of the Indiana Constitution. (See AK Steel's Br. at 31-34.) That provision prohibits the enactment of special laws regarding, among other things, "the assessment and collection of taxes for State, county, township, or road purposes[.]" IND. CONST. art. 4, § 22. A special law "'pertains to and affects a particular case, person, place, or thing, as opposed to the general public.'" Mun. City of South Bend v. Kimsey, 781 N.E.2d 683, 689 (Ind. 2003) (citation omitted).

AK Steel asserts that with its "in Indiana" language, Indiana Code § 6-1.1-3-23 is a special law because it concerns the assessment of property and it affects only AK Steel, i.e., "the only integrated steel producer in Indiana that has a blast furnace located

20

outside of Indiana." (AK Steel's Br. at 31 (citation omitted).) The Court disagrees.

"A statute is 'general' if it applies 'to all persons or places <u>of a specified class</u> throughout the state.'" <u>Kimsey</u>, 781 N.E.2d at 689 (citation omitted and emphasis added). Although Indiana Code § 6-1.1-3-23 was enacted in response to the financial turmoil that was occurring in northern Indiana, the Legislature drafted the statute to apply generally to a specified class throughout the state: <u>any</u> person that has a blast furnace in Indiana – <u>regardless of where in Indiana</u> – is eligible to use Pool 5 to value its property.

For purposes of Indiana Code § 6-1.1-3-23, AK Steel is not a member of the specified class (<u>i.e.,</u> a person that produces steel by processing iron ore and other raw materials in a blast furnace <u>in Indiana</u>). Because the specified class is reasonably related to carrying out the Legislature's legitimate purpose for creating Pool 5, <u>supra</u> pp. 14-15, AK Steel's Article 4, Section 22 claim also fails.[16]

## E. UNIFORMITY AND EQUALITY IN ASSESSMENT

Finally, AK Steel claims that the "in Indiana" language of Indiana Code § 6-1.1-3-23 violates Article 10, § 1 of the Indiana Constitution, which states that "[t]he General Assembly shall provide, by law, for a uniform and equal rate of property assessment and taxation and shall prescribe regulations to secure a just valuation for taxation of all

---

[16] AK Steel claims that the "in Indiana" language was "intentionally crafted" as the means to specifically exclude AK Steel from using Pool 5. (<u>See</u> AK Steel's Br. at 32.) As support for that claim, AK Steel points to a statement made by the Indiana Legislative Services Agency in one of its Fiscal Impact Statements that at the time the "in Indiana" language was adopted, "[t]here [was] . . . one taxpayer, in Spencer County, that ha[d] its blast furnace in another state[.]" (AK Steel's Br. at 32-33 (<u>citing</u> Cert. Admin. R. at 991).) AK Steel also refers to a statement made by the Indiana Economic Development Corporation in its 2005 annual report that the "in Indiana" language "applies to only one steel mill in Indiana: AK Steel's plant in Spencer County, which has its blast furnace out of state." (<u>See</u> AK Steel's Br. at 33 (<u>citing</u> Cert. Admin. R. at 1011).) The Court, however, does not find that either of these statements supports AK Steel's claim.

property, both real and personal." IND. CONST. art. 10, § 1. AK Steel's entire argument and analysis as to this claim is that the "in Indiana" language "cause[s] substantially identical steel mill equipment to be taxed non-uniformly based on a factor which is entirely irrelevant to the physical or economic character of the equipment or its value – namely, the location of the property owner's blast furnace." (See AK Steel's Br. at 35-36.) (See also AK Steel's Reply Br. at 33-36.) This argument fails, however, because it is simply another restatement of AK Steel's equal protection claim which has already been rejected. See supra pp. 13-15.

## CONCLUSION

AK Steel has not shown that the "in Indiana" language contained in Indiana Code § 6-1.1-3-23's definition of an integrated steel mill is unconstitutional. Accordingly, the Indiana Board's final determination is AFFIRMED in result.